LOTTINGER, Judge.
This is a rule for collation filed by a nephew against his aunt. The trial court found that the plaintiff-in-rule failed to prove by a preponderance of the evidence the fair market value at the time of transfer of the four groups of immovable property involved in this suit. The plaintiff has appealed.
Frank B. Moore, III petitioned the trial court on November 2, 1971, to open the succession of his grandfather, Frank B. Moore, Sr., who died on January 21, 1957, and to be named administrator of the succession. The petitioner comes to the succession of his grandfather by representation of Frank B. Moore, Jr., son of the decedent and father of the petitioner. The decedent had only two children-Frank B. Moore, Jr. and Gladys B. Moore.
On the day following the filing of the petition for administration, the petitioner filed a rule to show cause why five groups of immovable property purchased by his aunt, Gladys B. Moore, from her parents should not be collated. Only four groups of property were considered at trial. The petitioner has apparently dropped his claim as to the fifth group. In opposition to the rule, the defendant raised the issue of prescription, contending that the plaintiff’s claim for collation had prescribed long before the rule was filed. The trial court never made a final ruling on the prescription issue, and the defendant has not carried the issue forward on this appeal, so this issue is not before us.
The petitioner’s aunt purchased the four groups of immovable property from her parents about a year and a half prior to the death of her father. Her father was the sole vendor in one of the transactions, while both parents were the sellers in the other three transactions. Neither counsel raised the issue of whether the property involved in this case was community or separate property-an issue which would be extreme *1233 ly important should collation be required. Gladys Moore’s 101-year-old mother was still alive at the date of trial, and the collation claimed is only as to the succession of the petitioner’s grandfather. If the property involved is community property, then the collation due by Gladys Moore would only be one half that due if the successions of both of her parents were involved.
One of the plaintiff’s primary burdens at trial was to prove the fair market value of the property sought to be collated as of the date of the transfer. See La.C.C. 1248. The plaintiff’s only witness as to the fair market value of the four groups of property was a real estate appraiser who was qualified as an expert. Apparently acting on instructions from plaintiff’s counsel, the appraiser valued all four groups of property as of January, 1957, the date of death of the decedent.
In written reasons for judgment, the trial court held that the plaintiff’s proof was insufficient:
“The parties to this proceeding are charged with knowledge of the law, and have not established by probative evidence the fair value of the various tracts of property involved in this proceeding as of the dates of the respective acts of sale. * * * It may be that there were no factors at work in the several markets involved that would have drastically affected the fair market value of the properties from the dates of the act of sale until the death of Frank B. Moore, Sr. On the other hand, such factors may have existed which would have escalated prices upward or downward in the intervening period of time from sale to death of vendor Moore. In any event, it is the responsibility of the plaintiff in rule to prove his case by a preponderance of the evidence, and it is not for the Court to speculate as to what was or what might have been. It is incumbent upon the plaintiff in rule to prove all elements of his case by a preponderance of the evidence. Value at the time of sale is a vital element and has not been proven.”
Besides the fact that the plaintiff’s appraisal was made at the date of death instead of at the date of transfer, the trial judge also expressed doubt about the reliability of the plaintiff’s appraised valuations. Each parcel of property will be considered under a separate heading below.
THE CADDO PROPERTY
On July 28, 1955, Gladys B. Moore purchased from her father, Frank Moore, Sr., 29 acres and three lots of property in Caddo Parish. The recited consideration in the act of sale was $200.00. The plaintiff’s appraiser estimated that the fair market value of the 29 acres and three lots in Caddo Parish in 1957 would have been $35,200.00. He arrived at this figure after finding that the acreage would sell for $1,000.00 per acre, that two of the lots would sell for $100.00 a piece and that the third lot would sell for $6,000.00.
Gladys testified that the Caddo acreage was “nothing but mud and swamp” covered with high grass and occupied by a squatter. Testimony in the record indicates that she sold all of the Caddo property on June 3, 1968-some 13 years after she acquired it— for $2,000.00 by quitclaim deed. (The testimony and documentary evidence on the quitclaim question are woefully inadequate for reasons which we have not been able to understand. Gladys’ counsel elicited testimony about her sale of the property in 1968, but he failed to introduce the deed of sale or to describe with clarity and particularity the extent of the property transferred by her. The testimony suggests, however, that Gladys sold the acreage and the lots by quitclaim deed in 1968. Her testimony as to the sale was unrebutted.)
The trial court found that the appraiser’s valuation was insufficient because no testimony was offered that his evaluation was based on sales of surrounding properties comparable in time and space. The transcript indicates that the appraiser made his decision after viewing the property and discussing valuation with various people in the area. He placed a nominal value of $100.00 on each of two of the lots because he was *1234 unable to determine the dimension of the lot. He valued the third lot, which had a house on it, at $6,000.00 after viewing the property and house.
THE ST. TAMMANY PROPERTY
On July 28, 1955, Gladys purchased from her father and mother a certain parcel of land in St. Tammany Parish comprising 13 lots for a recited consideration of $50,-000.00. The dimension of the property from which the lots were carved is about 333 feet by 480 feet by 490 feet by 348 feet. The appraiser valued the St. Tammany land at a total of $80,000.00, after finding that there were four parcels involved, each with a different appraisal value.
The defendant testified that she bought the property from her father and mother for $50,000.00, after her father had offered the property to the public for $45,000.00. A circular purportedly prepared by Gladys’ father as an advertisement for the property was introduced into evidence. The circular corroborates Gladys’ testimony that the St. Tammany property was offered to the public for $45,000.00 by Frank Moore, Sr.
The plaintiff’s appraiser testified that he had difficulty locating the exact boundaries of the property in St. Tammany because the descriptions did not match a map that he obtained. The appraiser also testified that he did not have enough time to make a proper selection of comparable sales, although he did have time to make an opinion as to the fair market value of the property. The trial judge, saying he did not understand the difficulties encountered by the appraiser, found the property descriptions to be “clear.” The trial judge also apparently believed Gladys Moore’s testimony that, contrary to what the appraiser believed there were not two houses situated on one of the pieces of the St. Tammany property.
THE ALLARD STREET PROPERTY
On September 23, 1955, Gladys bought from her parents two 30 by 110 feet lots of ground on Allard Street in New Orleans for a recited consideration of $10,000^00. Of the total sales price, $3,360.95 was paid in cash while the balance of $6,639.05 represented the amount remaining on a mortgage assumed by Gladys. The appraiser valued the Allard Street property at $27,-000.00, basing his decision on two other sales he considered comparable to the sale by Mr. and Mrs. Moore to their daughter. One of the purportedly comparable property sales was for $22,000.00, and the other for $31,500.00. The trial court voiced concern with the Allard Street appraisal because there was a lack of testimony in the record to describe the condition of the house on the property in 1957, the time for which the evaluation was made.
THE TULANE STREET PROPERTY
On September 23,1955, Gladys purchased from her parents a lot on Tulane Street measuring about 22 feet by 99 feet. The recited consideration was $18,000.00. The plaintiff’s appraiser valued the Tulane Street property at $46,100.00, or $20.00 per square foot. As with the Allard Street property, he used what he considered to be comparable sales at or near the same time as Gladys Moore purchased the property from her parents. The sales prices of the nine comparable sales investigated by the appraiser ranged from $10.71 a square foot to $44.63 a square foot. Gladys paid $8.55 per square foot for the Tulane Street property.
The trial court raised the same concern about the Tulane Street property as it did about the Allard Street property. The record was devoid of testimony to describe the condition of improvements situated on the Tulane Street property as of January, 1957, the date for which the fair market value was being determined.
We agree with the trial court’s determination as to the St. Tammany, Allard Street and Tulane Street properties. The plaintiff-in-rule has simply failed to bear the burden imposed upon him by law. To determine whether the forced heir from whom collation is sought paid such a “very low price” for immovable property so as to *1235 require the collation, the claimant must prove the fair market value of the property at the time of the transaction. La.C.C. art. 1248; Estate of Schwegmann v. Schwegmann, 298 So.2d 795 (La.1974). The fair market value of immovable property at the date of death is important and relevant only after a determination has been made that collation is due. Fair market value at date of death then becomes important to show how much must be collated.
Given the propinquity of the dates of transfer and the date of death in this case, we are willing to concede that the testimony of the petitioner’s appraiser bears some probative value. But even conceding arguendo that the value of the three groups of property remained fairly constant from the date of transfer until the date of death, the plaintiff has still failed to prove the fair market property value at the date of death. We agree with the trial court’s reservations as to the testimony of the appraiser and find that collation is not due on the three groups of property.
The Caddo property, however-the one discussed first in the facts above-presents a more difficult question. Even considering the preinflation value of the dollar in the mid-1950s, the sale of 29 acres and three lots of land for $200.00 in 1955 appears to be on the low side. But the inadequacy vel non of the $200.00 consideration never ripened into an issue in this case, because the plaintiff failed to show by a preponderance of the evidence the fair market value of the property at the time of transfer. No comparable sales were introduced into evidence and the appraiser based his judgment solely on conversations with area residents and on his own inspection of the property. The probative value of the plaintiff’s appraisal was further weakened by Gladys’ testimony that there was a squatter on the land and that the property was sold some 18 years later for only $2,000.00. As indicated earlier, the testimony as to the sale of the property by Gladys in 1968 is confusing and meager. But it is also unrebutted. The defendant’s testimony and other evidence was sufficient to convince the trial court that the appraiser’s valuation was less than credible, and we must agree.
We must also agree with the trial court’s finding that Gladys paid all considerations recited in the acts of sale. Therefore, the plaintiff’s claim that no consideration changed hands is likewise untenable.
As the trial judge wrote, it was not his job “to speculate as to what was or what might have been.” When a plaintiff fails to present enough evidence to prove a vital element, or when his sketchy proof is muddled by the defendant’s rebuttal, this court will not attempt to guess what actually happened. The plaintiff has failed to show by a preponderance of the evidence the fair market value of the property at the time of the transaction.
Therefore, for the above and foregoing reasons, the decision of the trial court is affirmed at appellant’s costs.
AFFIRMED.